

FILED

MAY 15 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE BROWN,<br>   *Plaintiff,*<br><br>v.<br><br>MAXWELL HARRISON, LLC d/b/a THE<br>ORIGINAL MAXWELL STREET,<br>   *Defendant.* | Case No.: _____<br>**Date of Violation: August 4, 2025**<br>**COMPLAINT FOR VIOLATIONS OF**<br>**TITLE III OF THE AMERICANS WITH**<br>**DISABILITIES ACT, 42 U.S.C. §12181 et**<br>**seq.**<br><br>1:26-cv-05673<br>Judge Mary M. Rowland<br>Magistrate Judge Maria Valdez<br>Random/Cat 2 |

## COMPLAINT

Plaintiff George Brown, proceeding pro se, brings this action against Defendant Maxwell Harrison, LLC d/b/a The Original Maxwell Street, and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil rights action under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12181–12189, and 28 C.F.R. Part 36, to redress Defendant's failure to provide full and equal access to its public accommodation to Plaintiff, a qualified individual with a disability, and to remedy Defendant's continued failure to remediate known and documented accessibility barriers at its premises located at 3801 W. Harrison Street, Chicago, Illinois 60624 ("Subject Property").

2. The purported accessible parking space at the Subject Property is completely nonfunctional. Defendant's own guard rail infrastructure physically blocks entry to the space. The surface at the access aisle location slopes at up to 14.0% — more than six times the 2.083% maximum permitted under ADAAG §502.4 and steeper than the maximum permitted grade for an ADA-compliant pedestrian ramp. Standing water pools directly in the space. No continuous accessible route connects the space to the service entrance. The space is not merely non-compliant — it is completely nonfunctional and provides Plaintiff and every other disabled patron with no accessible parking whatsoever.

3. Defendant has been on formal legal notice of these specific accessibility deficiencies since June 26, 2023, when CCHR Case No. 23-P-59 was filed against Defendant by counsel on behalf of Carolyn Perteet, a disabled patron who was denied access at the same property due to the same absence of accessible parking. Despite this formal legal notice, Defendant failed to remediate the documented accessibility barriers for a period exceeding two years. Plaintiff subsequently

encountered the same inaccessible conditions on August 4, 2025 and sustained injury while attempting to access the facility. Defendant's continued noncompliance despite actual notice is actionable under Seventh Circuit precedent.

**4.** Following Plaintiff's injury, Defendant's counsel made three material representations to the Chicago Commission on Human Relations ("CCHR") that were inconsistent with the evidentiary record and rejected by the Commission in its final Substantial Evidence finding. The CCHR issued an Order Finding Substantial Evidence of disability discrimination on March 6, 2026. Defendant did not file a Request for Review. The finding is final.

## II. JURISDICTION AND VENUE

**5.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as this action arises under Title III of the ADA, 42 U.S.C. §§12181–12189.

**6.** Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), as Defendant maintains its principal place of business in this District and all events giving rise to this action occurred in this District.

**7.** This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§2201 and 2202, and injunctive relief pursuant to 42 U.S.C. §12188(a).

## III. PARTIES

**8.** Plaintiff George Brown is a natural person residing in Chicago, Illinois. Plaintiff has end-stage renal disease ("ESRD") requiring hemodialysis treatment three times per week, two herniated disks in his cervical and lumbar spine, limited mobility and stamina, and requires a home health aide for basic daily activities. Plaintiff holds a valid Illinois disability placard. Plaintiff drives a sport utility vehicle and requires a van-accessible parking space for safe vehicle egress and ingress. Plaintiff's medical conditions require consistent and uninterrupted access to public accommodations and medical treatment facilities. Interruption of Plaintiff's treatment regimen as a result of physical injury sustained at inaccessible facilities causes serious and immediate medical consequences. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12102 and 28 C.F.R. §36.104.

**9.** Defendant Maxwell Harrison, LLC is an Illinois limited liability company doing business as The Original Maxwell Street, operating a quick-service restaurant at 3801 W. Harrison Street, Chicago, Illinois 60624. Defendant is a place of public accommodation within the meaning of 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104. Defendant owns, leases, leases to, or operates the Subject Property and the parking facility serving the Subject Property ("Parking Facility"), as evidenced by Defendant's installation and maintenance of its own parking infrastructure throughout the Parking Facility.

## IV. FACTUAL ALLEGATIONS

### A. Prior Notice — CCHR Case No. 23-P-59

10. On April 30, 2023, Carolyn Perteet, a 73-year-old person with a disability utilizing crutches and a walker and holding a valid Illinois disability placard, visited Defendant's restaurant at 3801 W. Harrison Street with her cousin, a person with a visual impairment. Neither Ms. Perteet nor her cousin could access the restaurant due to the absence of accessible parking. Ms. Perteet subsequently filed CCHR Case No. 23-P-59 against Defendant, alleging that Defendant "did not provide accessible parking with an access aisle." Said complaint is attached hereto as Exhibit 1.

11. CCHR Case No. 23-P-59 was filed by counsel, Diesel Law, Ltd., and received by the Chicago Commission on Human Relations on June 26, 2023. Said complaint was served upon Defendant, placing Defendant on formal legal notice of the specific accessibility deficiencies at the Subject Property — specifically the absence of accessible parking and a compliant access aisle — no later than June 26, 2023.

12. Despite this formal legal notice through counsel, Defendant took no compliant remedial action. The accessibility deficiencies documented in the Perteet complaint persisted unremedied for a period exceeding two years. The subsequent disposition of CCHR Case No. 23-P-59 does not diminish or extinguish the formal legal notice provided to Defendant upon service of that complaint. Actual knowledge of specific accessibility barriers is established by receipt of formal legal notice — not by the outcome of the proceeding in which that notice was given. See Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1076 (7th Cir. 2013).

### B. Plaintiff's Visit, Injury, and Denial of Access — August 4, 2025

13. On August 4, 2025 — the date of the discriminatory conduct giving rise to this Complaint — Plaintiff George Brown visited Defendant's restaurant at 3801 W. Harrison Street, Chicago, Illinois. This visit occurred two years, one month, and nine days after Defendant received formal legal notice of the identical accessibility deficiencies through CCHR Case No. 23-P-59.

14. Plaintiff, who holds a valid Illinois disability placard and drives a sport utility vehicle requiring a van-accessible parking space, was unable to locate a compliant accessible parking space in the Parking Facility. The Parking Facility lacked a van-accessible parking space, a compliant access aisle, and a continuous accessible route to the service entrance.

15. Plaintiff parked at the far end of the Parking Facility nearest South Independence Boulevard in the absence of available compliant accessible parking. While traversing the Parking Facility surface, Plaintiff stepped into an active pothole, tripped, and sustained a sprained ankle. The surface condition was a direct and proximate result of Defendant's failure to maintain a stable, firm, and slip-resistant surface as required by ADAAG §302.1.

16. After sustaining his injury, Plaintiff reported the condition to a cashier employed by Defendant. Defendant's employee stated to Plaintiff that the condition of the parking lot was not Respondent's problem. This statement reflected Defendant's failure to address the reported hazardous condition despite actual notice provided directly to its employee.

17. As a direct and proximate result of Defendant's inaccessible facility and resulting conditions, Plaintiff suffered physical injury, aggravation of mobility limitations, significant physical distress

associated with missed hemodialysis appointments, inconvenience, and denial of full and equal enjoyment of Defendant's public accommodation.

### C. Documented Accessibility Violations

18. ADA 360 Accessibility Consulting, a civil rights compliance monitoring firm, conducted on-site accessibility inspections of the Subject Property in July 2025 and May 2026. ADA 360's inspections documented the following violations of the ADA Standards for Accessible Design ("ADAAG"), as documented in the photographic exhibits attached hereto as Exhibits 5 through 10:

- ADAAG §502.4 — Surface Slope: ADA 360 recorded surface slopes at the access aisle location on the driver's side of the accessible space of 3.4% (running slope, 1.8% cross slope) (Exhibit 8) and 3.6% (running slope, 0.9% cross slope) (Exhibit 9), and at the access aisle location on the passenger's side of the accessible space of 14.0% (running slope, 1.8% cross slope) (Exhibit 10). ADAAG §502.4 requires that parking spaces and access aisles shall have slopes not steeper than 1:48 (2.083%) in all directions. All three measurements independently exceed this maximum. The 14.0% measurement on the passenger's side — the critical transfer zone for an SUV driver requiring van-accessible parking — exceeds the maximum permitted slope by a factor of 6.72 and exceeds the maximum permitted grade for an ADA-compliant pedestrian ramp under ADAAG §405.2 (8.33%) by a factor of 1.68.

- ADAAG §§502.2 and 502.3 — Van-Accessible Space and Access Aisle: No van-accessible parking space exists in the Parking Facility. No compliant access aisle exists adjacent to the accessible space. Defendant's own guard rail infrastructure physically blocks entry to and egress from the accessible space (Exhibit 6), rendering it completely nonfunctional. The passenger side of the accessible space — where a van-accessible ramp or lift would deploy — has a documented slope of 14.0%, making safe vehicle egress physically impossible.

- ADAAG §502.6 — Signage: The accessible parking sign is mounted on a chain-link fence perimeter barrier, not on a post or wall at the head of the parking space as required. No van-accessible designation exists anywhere in the Parking Facility. The sign is not constructed of retroreflective material, rendering it non-visible during Defendant's evening hours of operation (Exhibit 5). The sign is in a severely deteriorated physical condition, failing the maintenance requirement of 28 C.F.R. §36.211.

- ADAAG §§206.2.1, 302.1, 402, and 403 — Accessible Route and Surface Conditions: No continuous accessible route connects the Parking Facility to the service entrance (Exhibit 5). The Parking Facility surface is severely deteriorated, containing active potholes, cracking, loose aggregate, and standing water pooling directly in and around the accessible space (Exhibits 7), in violation of the requirement for a stable, firm, and slip-resistant surface.

19. Taken together, the documented conditions render the purported accessible parking space completely nonfunctional. Defendant's own guard rail physically blocks entry (Exhibit 6). The passenger-side access aisle slopes at 14.0% (Exhibit 10). Standing water pools in the space (Exhibit 7). No accessible route exits the space (Exhibit 5). The space provides Plaintiff and every other disabled patron with no accessible parking whatsoever.

### D. Defendant's October 2025 Remediation Attempt

20. Following the filing of CCHR Case No. 25-P-29, Defendant applied cosmetic asphalt patches to portions of the Parking Facility in or around October 2025. This work was performed without architectural oversight and, upon information and belief, without required City of Chicago building permits. ADA 360's May 2026 inspection confirmed that all documented violations persist. The October 2025 work additionally triggered independent alteration compliance obligations under 28 C.F.R. §36.402, requiring that altered areas and the accessible path of travel thereto be brought into full compliance. Defendant's post-alteration facility remains non-compliant.

### E. Defendant's Representations to the CCHR

21. In connection with CCHR Case No. 25-P-29, Defendant's counsel made the following representations to the Chicago Commission on Human Relations, as documented in the CCHR Investigation Summary attached hereto as Exhibit 2:

- First: "Respondent asserts that it is in compliance with all Chicago parking accessibility ordinances." This representation was rejected by the CCHR in its Order Finding Substantial Evidence of disability discrimination entered March 6, 2026 (Exhibit 3);

- Second: "no accessible parking space is required due to the size of the parking lot." No size exemption from accessible parking requirements exists under Title III of the ADA, 42 U.S.C. §12182, or ADAAG §208.1. This representation was inconsistent with Title III accessibility requirements and ADAAG §208.1; and

- Third: Defendant "has an accessible parking space that has been present since 2024." This representation is directly contradicted by Defendant's own photograph submitted to the CCHR (Exhibit 4), which bears a surveillance camera timestamp of October 16, 2023 — predating the claimed 2024 installation — and by the CCHR's finding that Defendant's lot had no designated accessible parking as of September 30, 2025.

22. These three representations are mutually contradictory and each is independently inconsistent with the evidentiary record. Defendant simultaneously asserted that no accessible space was required and that it had provided one since 2024 — positions that cannot both be true. Defendant's representations to the CCHR were inconsistent, contradictory, and rejected by the Commission in its final Substantial Evidence finding.

### F. CCHR Order Finding Substantial Evidence and Pending Administrative Hearing

23. On March 6, 2026, the Chicago Commission on Human Relations issued an Order Finding Substantial Evidence of public accommodation discrimination based on disability in CCHR Case No. 25-P-29, attached hereto as Exhibit 3. The Commission specifically determined that: (a) Plaintiff has a disability as defined by the Chicago Human Rights Ordinance; (b) Plaintiff was qualified to patronize Defendant's restaurant and to use accessible parking; (c) at the time of Plaintiff's visit, Defendant's parking lot was inaccessible; (d) as of September 30, 2025, Defendant's parking lot had no designated accessible parking and was in a state of disrepair; and (e) Defendant failed to show that no barriers existed at the time of Plaintiff's visit or that removal of barriers was not readily achievable. Defendant did not file a Request for Review. The finding is final.

24. CCHR Case No. 25-P-29 is currently pending Administrative Hearing before the Chicago Commission on Human Relations following the March 6, 2026 Order Finding Substantial

Evidence. The CCHR Administrative Hearing and this federal action address overlapping conduct — Defendant's failure to provide accessible parking at 3801 W. Harrison Street in violation of both the Chicago Human Rights Ordinance and Title III of the Americans with Disabilities Act. The factual record developed in the CCHR proceeding, including the Commission's Substantial Evidence finding, constitutes persuasive authority supporting the claims alleged herein. A final order issued by the CCHR following Administrative Hearing may have preclusive effect in this proceeding pursuant to 28 U.S.C. §1738 and University of Tennessee v. Elliott, 478 U.S. 788 (1986).

### G. Actual Knowledge and Continuing Failure to Remediate

**25.** Defendant's actual knowledge and continuing failure to remediate are established by the following documented sequence: (a) formal legal notice through CCHR Case No. 23-P-59, filed by counsel, June 26, 2023 (Exhibit 1); (b) two years and one month of continued noncompliance following that notice; (c) Plaintiff's injury and denial of access on August 4, 2025; (d) Defendant's employee's failure to address the reported hazardous condition; (e) a cosmetic remediation attempt in October 2025 that failed to cure any documented violation; (f) three representations to the CCHR that were inconsistent with the evidentiary record and rejected by the Commission; (g) a Substantial Evidence finding entered against Defendant on March 6, 2026 (Exhibit 3); and (h) continuing noncompliance documented by ADA 360 in May 2026 — nearly three years after formal notice. The foregoing sequence demonstrates actual knowledge and continuing noncompliance despite formal notice under Seventh Circuit precedent.

## V. CAUSE OF ACTION — VIOLATION OF TITLE III OF THE ADA, 42 U.S.C. §12182

**26.** Plaintiff incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

**27.** Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12102.

**28.** Defendant is a private entity that owns, leases, or operates a place of public accommodation within the meaning of 42 U.S.C. §12181(7)(B).

**29.** Defendant has discriminated against Plaintiff in violation of 42 U.S.C. §12182(a) by: (a) failing to remove known architectural barriers where such removal was readily achievable, in violation of 42 U.S.C. §12182(b)(2)(A)(iv) and 28 C.F.R. §36.304; (b) failing to maintain accessible features in operable working condition as required by 28 C.F.R. §36.211; and (c) failing to provide full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of its public accommodation.

**30.** Defendant's specific conduct giving rise to this claim includes: operating a public accommodation with a parking facility that is completely nonfunctional for persons with disabilities; maintaining surface slopes of 3.4%, 3.6%, and 14.0% at the access aisle locations — each exceeding the 2.083% maximum required by ADAAG §502.4; installing and maintaining its own guard rail infrastructure that physically blocks the accessible space; failing to provide a van-accessible parking space, a compliant access aisle, or a continuous accessible route to the service entrance; mounting accessible parking signage on a chain-link fence without a van-accessible designation; and continuing this conduct for nearly three years after receiving formal legal notice of the identical deficiencies through CCHR Case No. 23-P-59. Each of these conditions

independently constitutes a failure to provide full and equal enjoyment of a public accommodation in violation of 42 U.S.C. §12182(a).

31.    Defendant's specific violations of the ADA Standards for Accessible Design include violations of ADAAG §§206.2.1, 208.2.4, 302.1, 303.1, 402, 403, 405.2, 502.2, 502.3, 502.4, and 502.6, and 28 C.F.R. §§36.211 and 36.402.

32.  Defendant had actual knowledge of the accessibility barriers at the Subject Property no later than June 26, 2023. Defendant's failure to remediate those barriers for a period exceeding two years, combined with representations of compliance to a government agency that were rejected by that agency, demonstrates actual knowledge and continuing noncompliance despite formal notice under Seventh Circuit precedent. See Scherr v. Marriott Int'l, Inc., 703 F.3d 1069 (7th Cir. 2013). [COUNSEL TO SUPPLEMENT WITH ADDITIONAL SEVENTH CIRCUIT AUTHORITY AS APPROPRIATE]

33.    Plaintiff has standing to seek injunctive relief. Plaintiff is deterred from returning to Defendant's restaurant by the documented accessibility barriers. As a person with a disability who holds a valid Illinois disability placard, requires van-accessible parking, and whose medical conditions require consistent uninterrupted access to public accommodations, Plaintiff faces a real and immediate threat of future injury at the Subject Property. Plaintiff intends to return to The Original Maxwell Street upon achievement of full accessibility compliance.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff George Brown respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant Maxwell Harrison, LLC d/b/a The Original Maxwell Street, and grant the following relief:

**A.**
A declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202 that Defendant has violated and continues to violate Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181–12189, and its implementing regulations at 28 C.F.R. Part 36;

**B.**
A permanent injunction pursuant to 42 U.S.C. §12188(a) requiring Defendant to bring the Subject Property into full compliance with the ADA Standards for Accessible Design within one hundred twenty (120) days of this Court's Order, specifically including: (i) provision of at least one van-accessible parking space complying with ADAAG §§208.2.4 and 502.2; (ii) provision of a compliant access aisle adjacent to the accessible parking space as required by ADAAG §502.3; (iii) reconstruction and regrading of the accessible parking space, access aisle, and accessible route to achieve surface slopes not exceeding 1:48 (2.083%) in all directions as required by ADAAG §502.4, with slope compliance verified by independent calibrated measurement prior to certification; (iv) installation of compliant accessible parking signage on a post or wall including a van-accessible designation as required by ADAAG §502.6; (v) reconstruction of the Parking Facility surface to provide a stable, firm, and slip-resistant surface free of changes in level exceeding one-quarter inch as required by ADAAG

§§302.1 and 303.1; (vi) provision of a continuous accessible route from accessible parking to the service entrance as required by ADAAG §206.2.1; (vii) removal of all barriers from the accessible route including Defendant's own installed infrastructure currently blocking the accessible space; and requiring that all remediation comply with 28 C.F.R. §36.402, and that Defendant file a written certification of compliance with this Court within one hundred fifty (150) days of this Order, including independent calibrated slope measurement data confirming compliance with ADAAG §502.4 in all directions at all accessible parking spaces, access aisles, and accessible routes;

**C.**
An order retaining jurisdiction to enforce Defendant's compliance with the injunctive relief granted herein and to address any failure to achieve compliance within the prescribed timeframe, including the authority to impose sanctions for non-compliance;

**D.**
An order recognizing that any final determination issued by the Chicago Commission on Human Relations in Case No. 25-P-29 following Administrative Hearing shall be accorded appropriate preclusive effect in this proceeding pursuant to 28 U.S.C. §1738 and University of Tennessee v. Elliott, 478 U.S. 788 (1986);

**E.**
An award of reasonable attorney's fees, litigation expenses, and costs pursuant to 42 U.S.C. §12205;

**F.**
An award of costs of suit; and

**G.**
Such other and further relief as the Court deems just and proper.


## VII. EXHIBIT DIRECTORY


The following exhibits are filed with this Complaint. Plaintiff reserves the right to supplement exhibits and evidentiary materials as litigation proceeds.


**DOCUMENTARY EXHIBITS**

**Exhibit 1:** CCHR Case No. 23-P-59 — Carolyn Perteet v. The Original Maxwell Street — Complaint filed and received by CCHR June 26, 2023. Source: Chicago Commission on Human Relations / Diesel Law, Ltd. Purpose: Establishes formal legal notice to Defendant of the specific accessibility deficiencies at the Subject Property — specifically the absence of accessible parking and a compliant access aisle — no later than June 26, 2023. The subsequent disposition of this complaint does not diminish the formal legal notice established by its filing and service upon Defendant.

**Exhibit 2:** CCHR Investigation Summary — Case No. 25-P-29 — George Brown v. Maxwell Harrison, LLC — March 2026. Source: Chicago Commission on Human Relations. Purpose: Documents Defendant's three representations to the CCHR that were inconsistent with the

evidentiary record and rejected by the Commission, and the Commission's factual findings including the determination that the Parking Facility had no designated accessible parking as of September 30, 2025.

**Exhibit 3:** CCHR Order Finding Substantial Evidence — Case No. 25-P-29 — Entered March 6, 2026, Mailed March 11, 2026. Source: Chicago Commission on Human Relations. Purpose: Government determination of substantial evidence of public accommodation discrimination based on disability. No Request for Review was filed. The finding is final.

**Exhibit 4:** Surveillance Photograph of Defendant's Parking Facility — submitted by Defendant to CCHR as evidence of compliance. Timestamp embedded in image: 10-16-2023 12:31:33 PM. Source: Maxwell Harrison, LLC (Defendant's own submitted exhibit). Purpose: Directly contradicts Defendant's representation that a compliant accessible space has been present since 2024, as the photograph predates that claim by more than one year while depicting active potholes and deteriorated asphalt.

## PHOTOGRAPHIC EXHIBITS — Authenticated by Declaration of George Young, ADA 360 Accessibility Consulting

**Exhibit 5:** The Original Maxwell Street, 3801 W. Harrison Street, Chicago, Illinois — May 12, 2026, evening. Defendant actively serving customers. Purported accessible parking sign visible on chain-link fence, far left background. No continuous accessible route exists between any parking position and the service window. Demonstrates ongoing noncompliance during active business hours. Photographer: George Young, ADA 360 Accessibility Consulting.

**Exhibit 6:** Defendant's own guard rail infrastructure physically blocking entry to and egress from the purported accessible parking space. International Symbol of Accessibility marking visible on pavement surface directly behind the barrier. May 2026. Demonstrates that the purported accessible space is completely nonfunctional due to Defendant's own installed infrastructure. Photographer: George Young, ADA 360 Accessibility Consulting.

**Exhibit 7:** Standing water pooling directly in and around the purported accessible parking space at 3801 W. Harrison Street. International Symbol of Accessibility marking visible beneath standing water. May 12, 2026. Demonstrates drainage failure and unstable, non-slip-resistant surface in violation of ADAAG §302.1. Photographer: George Young, ADA 360 Accessibility Consulting.

**Exhibit 8:** Calibrated clinometer measurement — driver's side access aisle location — 3801 W. Harrison Street — Measurement 1. Running slope: 3.4%. Cross slope: 1.8%. ADAAG §502.4 maximum permitted slope: 2.083% in all directions. Violation confirmed. May 2026. Photographer: George Young, ADA 360 Accessibility Consulting.

**Exhibit 9:** Calibrated clinometer measurement — driver's side access aisle location — 3801 W. Harrison Street — Measurement 2. Running slope: 3.6%. Cross slope: 0.9%. ADAAG §502.4 maximum permitted slope: 2.083% in all directions. Violation confirmed. Establishes pattern of non-compliant slope throughout driver's side access aisle. May 2026. Photographer: George Young, ADA 360 Accessibility Consulting.

**Exhibit 10:** Calibrated clinometer measurement — passenger's side access aisle location — 3801 W. Harrison Street — Measurement 3. Running slope: 14.0%. Cross slope: 1.8%. ADAAG §502.4 maximum permitted slope: 2.083% — exceeded by a factor of 6.72. Maximum permitted ADA ramp grade under ADAAG §405.2: 8.33% — also exceeded. Passenger side is the critical transfer

zone for SUV drivers requiring van-accessible parking. May 2026. Photographer: George Young, ADA 360 Accessibility Consulting.

## DECLARATION OF GEORGE YOUNG IN SUPPORT OF PHOTOGRAPHIC EXHIBITS

I, George Young, Associate, ADA 360 Accessibility Consulting, 3345 S. Indiana Avenue, Chicago, Illinois 60616, declare under penalty of perjury under the laws of the United States of America as follows:

**1.** I conducted on-site accessibility inspections of the parking facility at 3801 W. Harrison Street, Chicago, Illinois 60624 in July 2025 and May 2026 on behalf of Plaintiff George Brown.

**2.** Exhibits 5 through 10 are true and accurate photographs taken by me at 3801 W. Harrison Street, Chicago, Illinois in May 2026. I have not altered, filtered, or modified any photograph. The metadata embedded in each photograph accurately reflects the date, time, and conditions under which each photograph was taken.

**3.** The clinometer measurements depicted in Exhibits 8, 9, and 10 were recorded by me using a calibrated Clinometer application (Breitling Software) installed on my mobile device. Prior to conducting measurements I verified the calibration of the application against a known level surface registering 0.0%. The readings depicted in each exhibit accurately reflect the surface slopes measured at the locations described in each exhibit caption.

**4.** Exhibit 8 depicts a running slope measurement of 3.4% and cross slope of 1.8% at the driver's side access aisle location of the purported accessible parking space.

**5.** Exhibit 9 depicts a running slope measurement of 3.6% and cross slope of 0.9% at a second point on the driver's side access aisle location.

**6.** Exhibit 10 depicts a running slope measurement of 14.0% and cross slope of 1.8% at the passenger's side access aisle location — the critical transfer zone for a driver of a sport utility vehicle requiring van-accessible parking.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signature: _____

George Young, Associate
ADA 360 Accessibility Consulting
3345 S. Indiana Avenue, Chicago, Illinois 60616
Executed on ___5 - 15___, 2026 at Chicago, Illinois.

---

**RESPECTFULLY SUBMITTED**

Dated: May 13, 2026

Signature: _____

**George Brown**
Pro Se Plaintiff
Chicago, Illinois
Telephone: 779-208-9103
Email: Gbrown4205@gmail.com

---

## DECLARATION

I, George Brown, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff in the foregoing Complaint, that I have read the foregoing Complaint, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Signature: _____

Printed Name: George Brown

Executed on May 13, 2026 at Chicago, Illinois.

# PHOTOGRAPHIC EXHIBIT VOLUME
### Exhibits 5 Through 10

### George Brown v. Maxwell Harrison, LLC
### d/b/a The Original Maxwell Street

United States District Court
Northern District of Illinois, Eastern Division
Case No.: _____

Subject Property: 3801 W. Harrison Street, Chicago, Illinois 60624

Prepared by: ADA 360 Accessibility Consulting
Civil Rights Compliance Monitor
3345 S. Indiana Avenue, Chicago, Illinois 60616

Date of Inspection: May 2026
Date of Complaint: May 13, 2026

*All photographs authenticated by Declaration of George Young pursuant to 28 U.S.C. §1746. Original digital files preserved with full EXIF metadata. Photographs have not been altered, filtered, cropped, or modified.*

## EXHIBIT INDEX

Exhibit 5 — Nighttime establishing shot — business operating — no accessible route
Exhibit 6 — Guard rail blocking accessible space — space completely nonfunctional
Exhibit 7 — Standing water in accessible space — drainage failure
Exhibit 8 — Clinometer 3.4% — driver's side access aisle — Measurement 1
Exhibit 9 — Clinometer 3.6% — driver's side access aisle — Measurement 2
Exhibit 10 — Clinometer 14.0% — passenger's side access aisle — Measurement 3

## EXHIBIT 5

*File: IMG_4360.jpeg*

**Case:**

George Brown v. Maxwell Harrison, LLC d/b/a The Original Maxwell Street
United States District Court, Northern District of Illinois, Eastern Division

**Location:**

3801 W. Harrison Street, Chicago, Illinois 60624 — Full lot view from vehicle circulation area

**Date:**

May 12, 2026 — Evening (approximately 10:16 PM)

**Description:**

The Original Maxwell Street actively serving customers during evening hours. Purported accessible parking sign visible on chain-link fence, far left background. No continuous accessible route exists between any parking position and the service window. Standing water visible in accessible route. Business operating at night while lot remains completely inaccessible to persons with disabilities.

**Violation:**

ADAAG §§206.2.1, 302.1, 402, 403, 502.6 — No accessible route; non-retroreflective signage; deteriorated surface

**Notes:**

This photograph was taken from the position closest to the service window — the optimal accessible approach — demonstrating that no compliant accessible route exists even from the best available position in the Parking Facility.

**Photographer/Technician:**

George Young, Associate, ADA 360 Accessibility Consulting
3345 S. Indiana Avenue, Chicago, Illinois 60616

*Authentication: See Declaration of George Young filed herewith. Photographs are true and accurate representations of conditions at the Subject Property. Original digital files preserved with full EXIF metadata.*

## EXHIBIT 6

*File: IMG_4299.jpeg*

**Case:**

George Brown v. Maxwell Harrison, LLC d/b/a The Original Maxwell Street
United States District Court, Northern District of Illinois, Eastern Division

**Location:**
3801 W. Harrison Street, Chicago, Illinois 60624 — Accessible parking space and guard rail

**Date:**
May 2026 — Daytime

**Description:**
Defendant's own yellow guard rail infrastructure physically blocking entry to and egress from the purported accessible parking space. The International Symbol of Accessibility is visible on the pavement surface directly behind the barrier. A person using a wheelchair, walker, crutches, or other mobility device cannot enter or exit the space without navigating around or over Defendant's own installed barrier. The space is completely nonfunctional.

**Violation:**
ADAAG §§502.1, 502.2, 502.3 — Accessible space completely nonfunctional; no compliant access aisle; no van-accessible space

**Notes:**
Defendant installed this guard rail. Defendant maintains this guard rail. The barrier directly in front of the accessible space — installed by the same entity claiming compliance — is the single most visually compelling evidence of the complete nonfunctionality of the purported accessible space.

**Photographer/Technician:**
George Young, Associate, ADA 360 Accessibility Consulting
3345 S. Indiana Avenue, Chicago, Illinois 60616

*Authentication: See Declaration of George Young filed herewith. Photographs are true and accurate representations of conditions at the Subject Property. Original digital files preserved with full EXIF metadata.*

## EXHIBIT 7

*File: IMG_4363.jpeg*

**Case:**
George Brown v. Maxwell Harrison, LLC d/b/a The Original Maxwell Street
United States District Court, Northern District of Illinois, Eastern Division

**Location:**

3801 W. Harrison Street, Chicago, Illinois 60624 — Accessible parking space

**Date:**
May 12, 2026 — Evening

**Description:**
Standing water pooling directly in and around the purported accessible parking space. The International Symbol of Accessibility marking is visible beneath the standing water. The pooling is caused by the non-compliant surface slope — water drains to the lowest point in the Parking Facility, which is the accessible space. A wheelchair user entering or exiting a vehicle in standing water faces wheel slippage, inability to propel the chair, and physical harm during transfer. A person on crutches faces an immediate fall risk on a wet, non-slip-resistant surface.

**Violation:**
ADAAG §302.1 — Surface not stable, firm, or slip-resistant; standing water creates active hazard

**Notes:**
The standing water is a direct consequence of the non-compliant slopes documented in Exhibits 8, 9, and 10. Water flows to the low point — which is the accessible space. The accessible space is simultaneously the most non-compliant and most dangerous point in the entire Parking Facility.

**Photographer/Technician:**
George Young, Associate, ADA 360 Accessibility Consulting
3345 S. Indiana Avenue, Chicago, Illinois 60616

*Authentication: See Declaration of George Young filed herewith. Photographs are true and accurate representations of conditions at the Subject Property. Original digital files preserved with full EXIF metadata.*

## EXHIBIT 8

*File: IMG_4300.PNG*

**Case:**
George Brown v. Maxwell Harrison, LLC d/b/a The Original Maxwell Street
United States District Court, Northern District of Illinois, Eastern Division

**Location:**
3801 W. Harrison Street, Chicago, Illinois 60624 — Driver's side access aisle, Measurement Point 1

**Date:**

May 2026

**Description:**

Calibrated clinometer measurement at the driver's side access aisle location of the purported accessible parking space — Measurement 1. The clinometer display shows a running slope of 3.4% and a cross slope of 1.8%.

**Measurement Data:**

Running Slope: 3.4% | Cross Slope: 1.8% ADAAG §502.4 Maximum: 1:48 (2.083%) in all directions Violation: Running slope exceeds maximum by 63% (factor of 1.63) Instrument: Clinometer application (Breitling Software) — calibrated against known level surface registering 0.0% prior to measurements

**Violation:**

ADAAG §502.4 — Surface slope at access aisle exceeds 2.083% maximum

**Photographer/Technician:**

George Young, Associate, ADA 360 Accessibility Consulting

3345 S. Indiana Avenue, Chicago, Illinois 60616

*Authentication: See Declaration of George Young filed herewith. Photographs are true and accurate representations of conditions at the Subject Property. Original digital files preserved with full EXIF metadata.*

## EXHIBIT 9

*File: IMG_4361.png*

**Case:**

George Brown v. Maxwell Harrison, LLC d/b/a The Original Maxwell Street
United States District Court, Northern District of Illinois, Eastern Division

**Location:**

3801 W. Harrison Street, Chicago, Illinois 60624 — Driver's side access aisle, Measurement Point 2

**Date:**

May 2026

**Description:**

Calibrated clinometer measurement at the driver's side access aisle location of the purported accessible parking space — Measurement 2. The clinometer display shows a running slope of 3.6% and a cross slope of 0.9%. This second measurement point, taken at a different location on the driver's side access aisle, confirms the slope violation is not an isolated anomaly but a consistent condition throughout the access aisle.

**Measurement Data:**

Running Slope: 3.6% | Cross Slope: 0.9% ADAAG §502.4 Maximum: 1:48 (2.083%) in all directions Violation: Running slope exceeds maximum by 73% (factor of 1.73) Instrument: Clinometer application (Breitling Software) — calibrated prior to measurements

**Violation:**

ADAAG §502.4 — Surface slope at access aisle exceeds 2.083% maximum; pattern established across two independent measurement points

**Notes:**

Two independent measurements on the driver's side — 3.4% and 3.6% — both exceeding the maximum. This eliminates any argument that a single reading was an instrument anomaly.

**Photographer/Technician:**

George Young, Associate, ADA 360 Accessibility Consulting

3345 S. Indiana Avenue, Chicago, Illinois 60616

*Authentication: See Declaration of George Young filed herewith. Photographs are true and accurate representations of conditions at the Subject Property. Original digital files preserved with full EXIF metadata.*

## EXHIBIT 10

*File: IMG_4357.png*

**Case:**

George Brown v. Maxwell Harrison, LLC d/b/a The Original Maxwell Street
United States District Court, Northern District of Illinois, Eastern Division

**Location:**

3801 W. Harrison Street, Chicago, Illinois 60624 — Passenger's side access aisle, Measurement Point 3

**Date:**

May 2026 (approximately 10:14 PM based on device timestamp)

**Description:**

Calibrated clinometer measurement at the passenger's side access aisle location of the purported accessible parking space — Measurement 3. The clinometer display shows a running slope of 14.0% and a cross slope of 1.8%. The passenger side is the critical transfer zone for a driver of a sport utility vehicle requiring van-accessible parking — it is where a wheelchair ramp or lift would deploy and where a disabled driver would transfer from the vehicle to a mobility device.

**Measurement Data:**

Running Slope: 14.0% | Cross Slope: 1.8% ADAAG §502.4 Maximum: 1:48 (2.083%) — EXCEEDED BY FACTOR OF 6.72 (572% over maximum) ADAAG §405.2 Maximum Ramp Grade: 8.33% — ALSO EXCEEDED (14.0% exceeds ramp maximum by factor of 1.68) Instrument: Clinometer application (Breitling Software) — calibrated prior to measurements

**Violation:**

ADAAG §502.4 — Surface slope at passenger's side access aisle exceeds 2.083% maximum by factor of 6.72; ADAAG §405.2 — Slope exceeds maximum permitted ramp grade

**Notes:**

A slope of 14.0% at the passenger's side — where Plaintiff George Brown, an SUV driver, would deploy a ramp or transfer from his vehicle — creates an immediate risk of wheelchair rollaway, loss of balance during transfer, and fall injury. This is not a technical deficiency. It is a physical danger. This single reading alone establishes that the accessible space is completely nonfunctional for the disabled patrons it is intended to serve.

**Photographer/Technician:**

George Young, Associate, ADA 360 Accessibility Consulting

3345 S. Indiana Avenue, Chicago, Illinois 60616

*Authentication: See Declaration of George Young filed herewith. Photographs are true and accurate representations of conditions at the Subject Property. Original digital files preserved with full EXIF metadata.*



**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**
740 N. Sedgwick, 4th Floor, Chicago, IL 60654
312/744-4111 (Voice), 312/744-1081 (Fax), 312/744-1088 (TDD)

**EXHIBIT 3**

IN THE MATTER OF:

George Brown
**Complainant,**

v.

Maxwell Harrison, LLC d/b/a The Original
Maxwell Street
**Respondent.**

Case No.: 25-P-29
Date of Order: **March 6, 2026**
Date Mailed: March 11, 2026

Sent via REGULAR US MAIL and E-mail:
George Brown
333 S. Central Ave.
Chicago, IL 60644
Gbrown4205@gmail.com

Timothy P. Donohue, Attorney at Law
228 West Main Street
Barrington, IL 60010
tpd@aol.com

## ORDER FINDING SUBSTANTIAL EVIDENCE

The Commission on Human Relations has determined that there is substantial evidence of a violation of the Chicago Human Rights Ordinance, as alleged by the Complainant. Specifically, the Commission finds substantial evidence of discrimination based on disability.

*The case will now proceed to a <u>settlement conference</u> before an independent mediator assigned by the Commission. An order setting the settlement conference will be mailed to the parties at a later date. If the case is not resolved via settlement, it will continue to an Administrative Hearing.*

A finding of substantial evidence is *not* a finding that an ordinance violation occurred, but only that there is enough evidence for the case to proceed to an administrative hearing if it is not resolved at the settlement conference. The enclosed Investigation Summary and Determination highlights evidence the Commission found relevant to its decision but does not necessarily describe all evidence received and reviewed. It states the reasoning of the Commission's senior staff who made the decision.

This order concludes the investigation process. Do not direct further communications about this case to any investigator. Parties or their attorneys may now arrange to inspect the investigation file pursuant to Rule 220.410. Requests must be made at least two business days in advance and should be directed to the Commission's docket clerk, telephone (312) 744-2863.

Attached are selected rules applicable after orders concluding investigations.

CHICAGO COMMISSION ON HUMAN RELATIONS
Entered:    March 6, 2026

# SELECTED RULES
## Applicable After Orders Concluding Investigations

*A full set of Rules is available at <u>www.chicago.gov/cchr</u>.*

**EXHIBIT 3**

### ACCESS TO INVESTIGATIVE FILES

**Rule 220.410(a). Access to Files: General Nondisclosure and Access by Parties.** Neither the Commission nor its staff shall disclose any information obtained in the course of investigation or mediation of a case except where otherwise required by law or intergovernmental agreement, or as ordered by a hearing officer pursuant to Reg. 240.370. However, after providing the Commission with notice of at least two business days, parties or their attorneys of record may inspect files pertaining to their own cases at any time after issuance of an order concluding the investigation process or dismissing the case in its entirety.

(1)     Notwithstanding the above, the Commission shall not allow parties to inspect internal memoranda, work papers, or notes generated by Commission staff or agents in the course of an investigation, or other materials reflecting the deliberative process, mental impressions, or legal theories and recommendations of the staff or agents of the Commission.

(2)     If a party files a written motion establishing good cause or if the Commission *sua sponte* determines that good cause exists, the Commission may require parties seeking access to an investigative file to comply with a protective order limiting use of the information to Commission or related state court proceedings and prohibiting other disclosure of information from the file.

**Rule 220.410(c). Access to Files: Copying Costs.** The Commission shall furnish copies of documents available for inspection at a charge not to exceed 20 cents per page plus any delivery costs. Copies shall not be released to the requester until the Commission has received payment in full. A party may seek waiver of these charges pursuant to Section 270.600.

**Section 270.600. Waiver of Commission Fees.** A party may by written motion request that the Commission waive its fees for copies of Commission documents. The motion shall be granted only on submission of an affidavit or other statement under oath plus any additional documentation establishing by objective evidence that the requesting party is unable to pay the charges and that the copies sought are necessary for pursuit of the party's claims or defenses in a Commission case. If the party's attorney of record was obtained through a not-for-profit legal assistance provider, the attorney's certification that the provider has determined the party to be indigent is sufficient objective evidence of inability to pay.

### REQUEST FOR REVIEW

**Rule 250.110. Review of Dismissals.** A complainant seeking review of the full or partial dismissal of a complaint by the Commission or a hearing officer must file and serve a request for review within 28 days of the mailing of the dismissal order. The request must be served on all other parties and the hearing officer (if any). Leave may be granted to respond or reply.

**Rule 250.130(a). Content of a Request for Review.** A request for review must state with specificity the reasons, evidence, or legal authority requiring reversal or modification of the decision in question. The request may not exceed 10 pages without leave from the Commission and must clearly state that the party is seeking reconsideration or review. Any new testimonial or documentary evidence must be provided with the request.

**Rule 250.130(b). Grounds for a Request for Review.** Grounds for reversal or modification may include relevant evidence which is newly discovered and not available at the time of the original decision; new and dispositive legal precedent not available at the time of the original decision; a material misrepresentation, misstatement, or omission which was a basis for the decision; or a material error by the Commission or hearing officer. If a complaint was dismissed for failure to cooperate, the request for review must (1) establish good cause for the complainant's noncompliance, at the time required, with the requirement which was the basis for dismissal; and (2) include any missing material which was a basis for the dismissal or show good cause for not doing so.

**Rule 250.140. Grant or Denial of Request for Review.** For dismissal orders entered by the Commission, the Commission shall rule on any request for review. For dismissal orders entered by a hearing officer, the hearing officer shall rule on any request for review. The Board of Commissioners shall rule on any request for review submitted with objections to a hearing officer's recommended ruling. If granting a reversal or modification pursuant to a request for review, the order shall describe any further proceedings in the case.

# EXHIBIT 1

CCHR CASE NO: 23-P59

 **CHICAGO**

**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**
740 N. Sedgwick, Suite 400, Chicago, IL 60654
312/744-4111 (Voice), 312/744-1081 (Fax), 312/744-1088 (TDD)
www.Chicago.gov/cchr, cchrfilings@cityofchicago.org

RECEIVED
CITY OF CHICAGO

JUN 26 2023

COMMISSION ON
HUMAN RELATIONS

## COMPLAINT

| COMPLAINANT'S NAME | TELEPHONE |
|---|---|
| Carolyn Perteet | 773-747-9411 |
| | E-MAIL aboyle@diesellaw.com |

| STREET ADDRESS | CITY, STATE, ZIP CODE |
|---|---|
| 704 s Independence | Chicago, IL 60624 |

| RESPONDENT'S NAME(S) | TELEPHONE |
|---|---|
| The Original Maxwell Street | 773-940-2270 |

| STREET ADDRESS | CITY, STATE, ZIP CODE |
|---|---|
| 3801 w Harrison St | Chicago, IL 60624 |

| TYPE OF COMPLAINT: | ❑EMPLOYMENT | ❑HOUSING | ☑PUBLIC ACCOMMODATION | ❑CREDIT | ☒BONDING |
|---|---|---|---|---|---|

**CHECK EACH DISCRIMINATION BASIS**, and state your status in the space provided. For example, if you claim national origin discrimination, state your national origin. If age, state your age.

| | | |
|---|---|---|
| ❑ RACE | ❑ SEX<br>❑ SEXUAL HARASSMENT | ✔ DISABILITY<br>Physical |
| ❑ COLOR | ❑ SEXUAL ORIENTATION | ❑ AGE (over 40) |
| ❑ NATIONAL ORIGIN | ❑ GENDER IDENTITY | ❑ SOURCE OF INCOME |
| ❑ ANCESTRY | ❑ MARITAL STATUS | ❑ MILITARY STATUS |
| ❑ RELIGION | ❑ PARENTAL STATUS | ❑ RETALIATION |
| ❑ CREDIT HISTORY<br>(Employment Only) | ❑ CRIMINAL RECORD/HISTORY<br>(Employment only) | ❑ RETALIATION<br>(Under Hotel Workers Ordinance) |
| ❑ BODILY AUTONOMY<br>ORDINANCE<br>(Housing & Employment Only) | | |

| DATE OF THE ALLEGED DISCRIMINATION<br>Month, day, and year. For *latest* incident if more than one. | 04/30/23 |
|---|---|

**ALLEGED DISCRIMINATORY CONDUCT.**

The Original Maxwell Street did not provide accessible parking with an access aisle for Ms. Perteet and her cousin to enter and access the establishment.

I swear or affirm that I have read this complaint and that it is true and correct to the best of my knowledge, information and belief. I give permission to each named respondent to release to the Commission on Human Relations any records or other evidence relevant to the allegations in this complaint, including but not limited to internal investigations, personnel records, and medical records.

| COMPLAINANT SIGNATURE: | DATE SIGNED (month/day/year) |
|---|---|
| *Carolyn Perteet* | June 26, 2023 |

RECEIVED
CITY OF CHICAGO

JUN 2 6 2023

COMMISSION ON
HUMAN RELATIONS

City of Chicago
COMMISSION ON HUMAN RELATIONS
740 N. Sedgwick, Suite 400, Chicago, IL 60654
(312) 744-4111 (Voice), (312) 744-1081 (Facsimile), (312) 744-1088 (TTY)
cchrfilings@cityofchicago.org

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| **Carolyn Perteet** | ) |
| | ) |
| COMPLAINANT, | ) Case No.: 23-P-59 |
| | ) |
| & | ) |
| | ) |
| **The Original Maxwell Street** | ) |
| | ) |
| RESPONDENT. | ) |

## COMPLAINT

NOW COMES the Complainant, Carolyn Perteet, by and through her attorneys, Diesel Law, Ltd., and complains against Respondent, The Original Maxwell Street, as follows:

1. Carolyn Perteet "Ms. Perteet" is a retired 73-year-old female and has had a complete knee replacement surgery, which has left one leg elongated. Ms. Perteet utilizes crutches and/or walker. Ms. Perteet has an Illinois disability placard and receives Social Security Disability Insurance. Ms. Perteet has standing.

2. Ms. Perteet visited The Original Maxwell Street located 3801 W. Harrison Street on April 30, 2023. This Maxwell does not have disabled compliant parking as required in Chicago. Accessible parking gives everyone the ability to access businesses. Ms. Perteet was not able to fully enjoy the premises and amenities, even though it is her right to be able to do so just like everyone else. Ms. Perteet also provides transportation to her cousin with a visual impairment. Neither of them could access the restaurant.

3. According to the Commission on Human Relations Enabling Ordinance, the city

1

23-P-59

council deems prejudice and the practice of discrimination against any individual or group based on race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status, lawful source of income, or credit history (as it pertains to employment) to be a threat to the public peace and welfare.

4. According to Chicago Commission on Human Rights Chapter 6-10, it is the policy of the City of Chicago to ensure that all persons within its jurisdiction have equal access to public services and are protected in the exercise of their civil rights, as well as to promote mutual understanding and respect among all who live and work in this city.

5. Under Chapter 6-10, no person who owns, leases, rents, operates, manages, or otherwise controls a public accommodation may withhold, deny, curtail, limit, or discriminate against the full use of such a public accommodation by any person based on the person's race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, or military discharge status.

6. In addition, the Commission on Human Relations Enabling Ordinance provides that a successful complainant may be awarded "reasonable attorney fees ... incurred in pursuing the complaint before the commission."

7. That the foregoing conduct constitutes discrimination under Chapter 6-10 of the Chicago Municipal Code.

WHEREFORE, Complainant Perteet respectfully prays that the Commission:

A. Docket the instant matter for further proceedings;

B. Enter an injunctive order compelling The Original Maxwell Street to have

2

*23-P-59*

a parking lot with proper accessible parking for disabled persons by a licensed contractor with the City of Chicago;

C.  Award Complainant actual damages for disability discrimination;

D.  Award Complainant punitive damages for disability discrimination;

E.  Order The Original Maxwell Street to pay Complainant's attorney fees;

F.  Order The Original Maxwell Street to pay Complainant's fees and costs; and

G.  Provide any and all further relief the Commission deems just and proper.

Respectfully Submitted,

DIESEL LAW, LTD.
Attorneys for Complainant Perteet

Anthony V. Boyle

Anthony V. Boyle
Attorney-at-Law
Diesel Law, Ltd.
1016 W. Jackson Blvd.
Chicago, Illinois 60607
Direct #: (708) 552-3536
aboyle@diesellaw.com
Cook County Code: 59592

3

23-P-59

RECEIVED
CITY OF CHICAGO

JUN 2 6 2023

COMMISSION ON
HUMAN RELATIONS

# EXHIBIT 1

## VERIFICATION

I swear or affirm that I have read this complaint and that it is true and correct to the best of my knowledge, information and belief. I give permission to each named respondent to release to the Commission on Human Relations any records or other evidence relevant to the allegations in this complaint, including by not limited to internal investigations, personnel records, and medical records. This complaint consists of 4 pages including this page.

*Carolyn Perteet*
_____
**COMPLAINANT'S SIGNATURE**

June 26, 2023
_____
**DATE SIGNED**

4



**EXHIBIT 2** Case No. 25-P-29

**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**

**INVESTIGATION SUMMARY**

| | | |
|---|---|---|
| **Case Number** 25-P-29 | | **Date of Determination** March 2026 |
| **Complainant** George Brown | | |
| **Respondent** Maxwell Harrison, LLC d/b/a The Original Maxwell Street | | |
| **Type of Case** __Employment __Housing X Public Accommodation __Credit __Bonding | | |
| **CLAIM** | **BASIS** | **DETERMINATION** |
| Denied Full and Equal Enjoyment | Disability | Substantial Evidence |

**Date Complaint Filed** August 13, 2025    **Date of Violation** August 4, 2025

1.    **COMPLAINANT'S POSITION**

Complainant, who has end-stage renal disease, alleges that Respondent subjected him to discrimination in a public accommodation in that Respondent failed to provide accessible parking at its restaurant located at 3801 West Harrison Street in Chicago, Illinois. Complainant alleges that on August 4, 2025, he visited Respondent's restaurant and was unable to locate accessible parking. Complainant alleges that Respondent's parking lot had dangerous potholes. Complainant alleges that he sprained his ankle while visiting Respondent's restaurant as a result of a lack of accessible parking and the presence of potholes.

2.    **RESPONDENT'S DESCRIPTION & BACKGROUND**

Respondent Maxwell Harrison, LLC, operates The Original Maxwell Street, a restaurant located at 3801 West Harrison Street in Chicago, Illinois.

3.    **RESPONDENT'S POSITION**

Respondent denies Complainant's allegations. Respondent asserts that it is in compliance with all Chicago parking accessibility ordinances. Respondent states that its business is walk up only and that it does not provide public washrooms or interior seating. Respondent asserts that no accessible parking space is required due to the size of the parking lot, but that nonetheless; it has provided full access as it has an accessible parking space that has been present since 2024.

1

Case No. 25-P-29

## 4.   COMPLAINANT'S REBUTTAL

Complainant states that he drove himself to Respondent's restaurant on August 4, 2025. Complainant states that he does not make use of any mobility aids. Complainant states that he has two herniated disks in his neck and spine and his dialysis for his renal disease makes mobility difficult for him. Complainant states that some days are worse than others but that his muscles can often tense and make it difficult or painful to walk. Complainant states that he has a home health aide that assists him with basic tasks at home.

Complainant states that he did not see any accessible parking spaces at Respondent's restaurant. Complainant states that he parked at the far end of the parking lot nearest South Independence Boulevard. Complainant states that he stepped into a pothole, tripped, and twisted his ankle. Complainant states that he complained to the cashier after getting up and walking to the counter, but that the cashier stated it was not Respondent's problem. Complainant states that he purchased a soda and left. Complainant states that he did not seek medical attention for his ankle. Complainant states that he iced his ankle for about a week before the pain subsided.

## 5.   DESCRIPTION OF RELEVANT DOCUMENTS *This may not include every document obtained, but includes any evidentiary documents (other than Complaints, Verified Responses, and Position Statements) on which the Commission bases its determination.*

a.     **Title or Description:** <u>Four Photos of Respondent's Parking Lot, dated October 16, 2023</u>[1]
**Source:** <u>Respondent</u>
**Relevant Content:** Image "A" shows a screen capture from a surveillance camera with the time stamp "10-16-2023 12:31:33 PM." [*SIC*] The image shows the entirety of Respondent's parking lot consisting of approximately eleven marked parking spaces. One parking space is marked with the universal symbol of access and has a marked access aisle to the immediate left side of the parking space. The accessible parking space is nearest the service counter of Respondent's restaurant near an opening in a vehicle barrier.

Image "B" bears no time stamp and shows a parking space with the universal symbol of access. The space has an accessible parking sign hanging from a chain link fence in front of the space. Image "C" shows a large pothole filled in with fresh asphalt. Image "D" shows a small pothole filled with fresh asphalt.

---

[1] Three photos appear without a timestamp and show Respondent's parking lot in a different condition than the surveillance camera image dated October 10, 2023.

2

b.      **Title or Description:** <u>Site Visit Report, dated September 30, 2025</u>
        **Source:** <u>CCHR</u>
        **Relevant Content:** The report consists of eight images in total. The parking lot at 3801 West Harrison Street has twelve marked parking spaces. No parking space is marked as accessible for people with disabilities. There appears to be the remnants of an accessible aisle, as shown in Image "C." However, the markings are faded so greatly that they would not reasonably delineate an access aisle. The parking lot as a whole is in a state of disrepair with large and small potholes dotting the surface of the lot. While there is a clear path to the purchase counter, there is no designated accessible parking space present.

Image "A" shows two parking spaces on either side of a nearly entirely faded accessible aisle. The accessible aisle is indistinguishable from the parking spaces on either side of it. No signage is visible on the chain link fence at the rear of the lot. Image "B" shows two entrances to the parking lot from street level. In the center of the photo are two large potholes. Image "D" shows a large pothole in the center of the parking lot approximately three feet long by one foot wide. Image "E" shows the parking lot from the view of the patron dining and purchase area. No parking space markings are discernible. Image "F" shows the patron dining and purchase area from the Harrison Street entrance. There is a cut out in the guard rail visible nearest the purchase counter and an open area allowing access from the sidewalk. Image "G" shows the majority of Respondent's parking area. No markings are discernible and no signage is present on the chain link fence abutting the lot. Image "H" shows the front of Respondent's business, showing a clear path to the purchase area from both the parking lot and the Harrison Street sidewalk.

c.      **Title or Description:** <u>Five Photos of Respondent's Parking Lot, dated October 24, 2025</u>
        **Source:** <u>Complainant</u>
        **Relevant Content:** Image "A" shows the same Image "A" from document "a" submitted by Respondent, the time stamp in the upper right corner is highlighted. Image "B" shows half of a parking space that has a universal access symbol and a thin orange rectangle drawn to the left of the space. Image "C" shows a large pothole with uneven pavement. Image "D" appears to show the second half of the pothole from Image "C". The pavement is uneven and does not completely fill the pothole. Image "E" shows an orange rectangle outline next to a parking space marked with the universal access symbol.

b.      **Title or Description:** <u>Complainant's Illinois Disability Parking Placard, expiring July 31, 2026</u>
        **Source:** <u>Complainant</u>
        **Relevant Content:** This image shows an Illinois Disability Parking Placard numbered EC61177. The expiration date is the last day of July 2026.

3

# EXHIBIT 2     Case No. 25-P-29

## 6.     DETERMINATION

Complainant, who has end stage renal disease, alleges that he was denied full and equal enjoyment of Respondent's restaurant in that Respondent's parking lot was inaccessible and caused Complainant injury. Respondent denies Complainant's allegations.

To state a *prima facie* case of public accommodation discrimination based on disability, Complainant must show that he has a disability, he was qualified to use the public accommodation at issue, and that due to Respondent's discriminatory actions he was denied full and equal enjoyment of the facility; in this case, due to no accessible parking spaces and a lot in disrepair. It is then Respondent's burden to show that there were no such barriers or to explain why the removal of the barriers was not readily achievable.

First, on the issue of disability, the Commission finds that Complainant was able to show that he has a disability as defined by the CHRO, and secondly, that he was qualified to patronize Respondent's restaurant and to utilize accessible parking, as he is in possession of a disability placard. The investigation revealed that at the time of Complainant's visit, Respondent's parking lot was inaccessible. The evidence shows that as of September 30, 2025, Respondent's parking lot had no designated accessible parking and was in a state of disrepair. While the evidence indicates Respondent may have begun work to remove barriers in October 2025; it failed to show that no such barriers existed at the time of Complainant's visit on August 4, 2025, nor did it explain why the removal of the barriers was not readily achievable at the time of the incident.

Accordingly, the Commission finds substantial evidence of public accommodation discrimination based on disability.

4

**EXHIBIT 4**



**EXHIBIT 1**







Exhibit 8



Exhibit 9



Exhibit 10